**Kelvin Dewayne BOWIE, Appellant,**

*v.*

**The STATE of Texas.**

**Nos. 639–03, 773–03, 774–03.**

Court of Criminal Appeals of Texas.

May 19, 2004.

R.K. Kris Weaver, Royce West, Dallas, for Appellant.

Jack Skeen, Jr., DA, Tyler, Matthew Paul, State's Attorney, Austin, for State.

## *OPINION*

HOLCOMB, J., delivered the opinion of the Court, in which MEYERS, PRICE, WOMACK, and JOHNSON, JJ., joined.

The question presented in these companion cases is whether punishment testimony by a defendant offered in the course of a "timely pass for plea" proceeding is protected by Texas Rule of Evidence 410. We hold that it is. We therefore affirm the judgment of the Dallas Court of Appeals [1] and reverse the judgment of the Tyler Court of Appeals [2].

### I. The Relevant Facts

On October 29, 2000, appellant shot Michael Wideman at a fast-food restaurant in Smith County. On May 10, 2001, appellant testified to a Smith County Grand Jury that: 1) he was defending his sister when he shot Wideman, and 2) he did not look for a gun to shoot Wideman. Appellant was indicted for Wideman's murder.

### A. The "Timely Pass for Plea" Proceeding

On October 4, 2001, appellant appeared before the Honorable Cynthia S. Kent in a Smith County district court for a "timely pass for plea." Judge Kent does not entertain plea bargain agreements. She implemented the "timely pass for plea" procedure to encourage defendants, who would not otherwise plead guilty without a plea agreement, to resolve their cases short of trial. Under the "timely pass for plea" procedure in Judge Kent's court, the State consents to the defendant's waiver of

jury trial and the defendant enters a guilty plea, both parties understanding that the court will allow the defendant to withdraw the plea if the punishment assessed exceeds that to which the defendant would agree. After evidence supporting the plea is presented, the court hears evidence and argument on the issue of punishment and makes and announces a punishment decision. The trial court then gives the defendant the option of accepting that sentence or withdrawing his plea and receiving a jury trial. If the defendant does not ask to withdraw the plea, the judge enters judgment on the plea.

Appellant pled guilty to murder. Judge Kent accepted his plea and his written judicial confession as sufficient evidence supporting the plea, acknowledged that she had received and reviewed the presentence report, and heard evidence and argument on the issue of punishment. The State called three witnesses, and then the defense called two witnesses, including appellant.

Appellant waived his Fifth Amendment right to remain silent after being advised by the court that such waiver would make him subject to cross-examination by the State. Appellant testified, under oath, that he did not, as he had told the Grand Jury, go home to go to sleep, but rather to find a gun, and that he shot Wideman not because he was defending his sister but "[b]ecause I was tired of him picking on me and just kept on taking things from me. I just got fed up with it."

After appellant testified and the parties gave their punishment arguments, Judge Kent announced her punishment assessment: fifty years confinement and a $5,000

---

1. *Bowie v. State,* No. 05–02–00527–CR, 2003 WL 568905, 2003 Tex.App. LEXIS 1811 (Tex. App.-Dallas 2003)(not designated for publication).

2. *State v. Bowie,* 137 S.W.3d 95, No. 12–02–00182/83–CR, 2003 WL 745153, 2003 Tex. App. LEXIS 1902 (Tex.App.-Tyler 2003).

fine. Appellant decided he wanted to withdraw his plea. Judge Kent allowed appellant to withdraw the plea and set the case for trial the following week. Judge Kent, granting appellant's motion to transfer, transferred his case to the 363rd District Court in Dallas County.

## B. The Dallas County Murder Trial

The State sought a pretrial ruling from the Dallas County District Court on the admissibility of appellant's "timely pass for plea" punishment testimony. Concluding that Rule 410(3) protected only the actual plea, the Dallas County District Court admitted, and the State presented to the jury at the guilt/innocence phase of the trial, statements appellant made during the Smith County plea proceeding on the issue of punishment. The jury convicted appellant of murder and assessed punishment, enhanced, at thirty years imprisonment.

On appeal, the Dallas Court of Appeals held that, based on the plain language of Rule 410(3), the trial court had abused its discretion in concluding that the Rule protected only the actual plea. Concluding that the error was harmful, the Dallas Court of Appeals reversed and remanded for a new trial.[3]

## C. The Perjury Charges in Smith County

Meanwhile, in Smith County, the State filed two aggravated perjury charges against appellant based on his inconsistent grand jury and plea-proceeding statements. Appellant filed a pre-trial motion to suppress the plea-proceeding statements based, once again, on Rule 410(3). Judge Kent held a hearing and granted appellant's motion. Her ruling was based on her conclusions that the "timely pass for plea" proceeding was comparable to a proceeding under Federal Rule 11 and that appellant's statements were made in the course of that proceeding. The State appealed.

The Tyler Court of Appeals, with one justice dissenting, held that, for purposes of Texas Rule of Evidence 410(3), Judge Kent's "timely pass for plea" procedure is not a state procedure comparable to the plea agreement proceedings under Federal Rule 11 because there was no compromise between the State and appellant and the judge was orchestrating the entire process.[4] The Tyler Court of Appeals, stating that the trial judge viewed the proceedings as a trial and placed the defendant under oath, said that no one is allowed to lie under oath during a judicial proceeding.[5] The Tyler Court of Appeals held that appellant's testimony was not protected by Rule 410(3) and was admissible as evidence in a trial on the perjury charges.[6]

We granted the State's petition in the Dallas case and appellant's petition in the Tyler cases to resolve the courts of appeals' conflicting decisions on the same issue on the same facts.[7]

---

3. *Bowie v. State*, No. 05–02–00527–CR, 2003 WL 568905, at *1, at *9.

4. *State v. Bowie*, 137 S.W.3d at 99, 2003 WL 745153, at *1–2, 2003 Tex.App. LEXIS 1902, at *8–9.

5. *Id.*

6. *Id.* at 99, at *2, at *10.

7. We granted review in the Dallas case on the State's sole ground:

(1) The [Dallas] Court of Appeals erred by holding, after a defendant enters a plea of guilty and stipulates to the evidence, and evidence is introduced by both sides and the defendant also testifies to the facts of the crime, that the defendant's sworn testimony from the witness stand is part of the plea proceedings and protected by rule 410(3) from admission in a subsequent trial, after the [plea] is allowed to be withdrawn.

## II. Standard of Review

■ Although a trial court's ruling on the admissibility of evidence is generally reviewed under an abuse of discretion standard, when the case presents a question of law based on undisputed facts, the issue is reviewed de novo.[8] We review this case de novo.

## III. Analysis

This is a case of first impression. This Court has never interpreted Texas Rule of Evidence 410(3). We must determine whether the "timely pass for plea" procedure utilized by the Smith County District Court is a proceeding under Federal Rule 11 or comparable state procedures. We must also determine whether a defendant's sworn testimony from the witness stand regarding punishment constitutes a statement made in the course of the plea proceedings as referred to in, and protected by, Rule 410(3).

## A. The Relevant Statutes

Texas Rule of Evidence 410(3)[9] makes inadmissible against the defendant in a subsequent proceeding "any statement made in the course of any proceedings under Rule 11 of the Federal Rules of

In the Tyler case, we granted review on appellant's six grounds:
(1) The Tyler Court of Appeals' decision in this cause conflicts with another court of appeals' decision on the same issue and concerning the same person and the same statements, to-wit: *Bowie v. State*, No. 05–02–00527–CR.
(2) The Tyler Court of Appeals has decided an important question of state law that has not been, but should be, settled by the Court of Criminal Appeals, to-wit: whether the plea proceedings in Texas must be uniform and be identical to the Federal plea proceedings before the prohibition of Tex.R.Crim. Evid. 410(3) applies;
(3) The Tyler Court of Appeals decision has decided an important question of state law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals, to-wit: the Court has reversed the trial judge's determination to exclude evidence based on a legal theory never presented to the trial judge, contrary to *Martinez v. State*, 91 S.W.3d 331 (Tex.Crim.App.2002), as well as a host of other preservation of error cases;
(4) The Tyler Court of Appeals has patently misconstrued a rule, to-wit: Tex.R.Crim. Evid. 410(3);
(5) Justices of the Tyler Court of Appeals have disagreed on a material question of law necessary to the court's decision; and
(6) In permitting the State to prevail on appeal on a legal theory never advanced in the trial court, the Tyler Court has so far departed from the accepted and usual court of judicial proceedings as to call for an

exercise of the Court of Criminal Appeals' power of supervision.

8. *Dyar v. State*, 125 S.W.3d 460, 462 (Tex. Crim.App.2003).

9. Rule 410 of the Texas Rules of Evidence, entitled "Inadmissibility of Pleas, Plea Discussions and Related Statements," provides:

Except as otherwise provided in this rule, evidence of the following is not admissible against the defendant who made the plea or was a participant in the plea discussions:
(1) a plea of guilty that was later withdrawn;
(2) in civil cases, a plea of nolo contendere, and in criminal cases, a plea of nolo contendere that was later withdrawn;
(3) any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure regarding, in a civil case, either a plea of guilty that was later withdrawn or a plea of nolo contendere, or in a criminal case, either a plea of guilty that was later withdrawn or a plea of nolo contendere that was later withdrawn; or
(4) any statement made in the course of plea discussions with an attorney for the prosecuting authority, in a civil case, that do not result in a plea of guilty or that result in a plea of guilty later withdrawn, or in a criminal case, that do not result in a plea of guilty or a plea of nolo contendere or that results in a plea, later withdrawn, of guilty or nolo contendere.

Criminal Procedure [10] or comparable state

**10.** Federal Rule 11 was amended in 2002. It was the rule as amended in 1999 that was in effect at the time of appellant's trial. However, it was the rule as amended in 1989 that was in effect at the time Texas Rule of Evidence 410 became effective, in 1998. Rule 410 does not indicate whether it is intended to refer only to the version of Federal Rule 11 in effect in 1998 or if it was intended to incorporate subsequent amendments to the Federal Rule. The 1999 amendments to Rule 11 do not effect the outcome of this case. However, in this opinion, Rule 11 will refer to the version in effect in 1998, Federal Rule 11 as effective December 1989, unless otherwise specified.

\* \* \* \*

Federal Rule of Criminal Procedure 11, Pleas, eff. Dec. 1, 1989, read in relevant part:

(a) Alternatives.

(1) In General. A defendant may plead not guilty, guilty, or nolo contendere....

(c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands the following: ...

(d) Insuring That the Plea is Voluntary ...

(e) Plea Agreement Procedure

(1) In General. The attorney for the government and the attorney for the defendant ... may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense, or to a lesser or related offense, the attorney for the government will do any of the following:

(A) move for dismissal of other charges; or

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case.... Such a plea agreement is binding on the court once it is accepted by the court. The court shall not participate in any such discussions.

(2) Notice of Such Agreement. If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement.... If the

procedure regarding ... a plea of guilty

agreement is of the type specified in subdivision (e)(1)(A) or (C), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea.

(3) Acceptance of a Plea Agreement. If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.

(4) Rejection of a Plea Agreement. If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court ... that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw the plea, and advise the defendant that if the defendant persists in a guilty plea ... the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

(5) Time of Plea Agreement Procedure ...

(6) Inadmissibility of Pleas, Plea Discussions, and Related Statements. Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

(A) a plea of guilty which was later withdrawn;

(B) a plea of nolo contendere;

(C) any statement made in the course of any proceedings under this rule regarding either of the foregoing pleas; or

(D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false

that was later withdrawn. . . ." This exclusion is necessary to protect the withdrawal of the plea itself. It would defeat the purpose of Rule 410 to exclude evidence of the plea but admit all of the defendant's statements and concessions made during a formal plea proceeding when that plea is later withdrawn.[11]

Federal Rule 11, to which Rule 410(3) refers, is entitled "Pleas" and provides what pleas may be entered and the procedures required when a guilty plea is entered; i.e., advising the defendant, determining the voluntariness and accuracy of the plea, and recording the proceedings. Rule 11 also sets out a plea agreement procedure, bringing the common practice of plea bargaining into open court.[12] It provides that any bargain must be disclosed in open court, sets forth what types of bargains could be made, provides additional advice the trial court must provide the defendant regarding the ability of the court to accept or reject the bargain, requires the trial court to inform the defendant of its decision and the consequences thereof, and requires the trial court to permit the defendant to withdraw the plea if the trial court rejects the bargain. However, a court is free not to permit the parties to present plea agreements.[13]

Specifically, Rule 11(e)(1) provides that the State and defendant may agree that the State will move for dismissal of other charges; make a recommendation, or agree not to oppose the defendant's request, for a particular sentence; or agree that a specific sentence is the appropriate disposition of the case. Rule 11(e)(2) provides that the court may defer its decision on the agreement until it has had an opportunity to consider a presentence report. Rule 11(e)(3) provides that if the court accepts the plea agreement, the judgment and sentence shall embody the disposition provided for in the plea agreement.

Rule 410(3) refers to Rule 11 as a whole, encompassing plea proceedings in which a plea agreement is presented to the court as well as those in which there is no plea agreement presented. Texas does not have a single statutory analog to Federal Rule 11, but there are several articles in the Code of Criminal Procedure that correspond to the various provisions of Rule 11. Article 27.13, entitled "Plea of guilty or nolo contendere in felony" provides that: "A plea of 'guilty' . . . in a felony case must be made in open court by the defendant in person; and the proceedings shall be as provided in Articles 26.13, 26.14 and 27.02. If the plea is before the judge alone, same may be made in the same

---

statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

(f) Determining Accuracy of Plea. Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

(g) Record of Proceedings . . .

**11.** *See, e.g., United States v. Davis,* 617 F.2d 677 (D.C.Cir.1979), in which the court of appeals explained the exclusionary purpose of Fed.R.Evid. 410(3):

Other statements made "during proceedings in connection with the disclosure and

acceptance or rejection of a plea agreement" fall within the rule as well. Excluding these statements is necessary to effectuate the rejection or later withdrawal. Were the statements admissible, the defendant's own incriminating words, inseparably linked to a plea now regarded as a nullity, in many cases would operate to convict him, thereby rendering meaningless the rejection or withdrawal.

*Id.* at 684 (citations omitted).

**12.** *See* Fed.R.Crim.P. 11 advisory committee's note 1974.

**13.** *See* Fed.R.Crim.P. 11 advisory committee's note 1975. *See also* Fed.R.Crim. P. 32(e).

manner as is provided for by Articles 1.13 and 1.15."

Article 26.13 sets out the admonishments a defendant must receive before he enters a guilty plea, including both the defendant's right to withdraw a plea should the court reject a plea bargain and the defendant's limited right to appeal, without the trial court's permission, only those matters raised by written motions filed prior to trial, unless the trial court accepts the plea agreement, but assesses punishment in excess of that recommended by the prosecutor and agreed to by the defendant. Article 26.13 also requires that the plea must be knowing, free and voluntary. Article 26.14 requires a defendant who persists in pleading guilty to have a jury impaneled to hear evidence and assess punishment unless the defendant has waived the right to trial by jury. Article 27.02, entitled "Defendant's pleadings" provides that a defendant may enter a plea of guilty. Articles 1.13 to 1.15 set out the procedures for waiving a jury trial and other constitutional rights before entering a plea. In a felony case they require the State to introduce sufficient evidence to support the judgment of guilt and allow for stipulated evidence if the defendant consents in writing.

■ The Texas Code of Criminal Procedure does not specify what types of bargains the State and defendant may enter into and present to the court. Nor does it require that the trial court, upon accepting a plea agreement, embody in the judgment and sentence the punishment agreed to by the parties. The trial court may assess a lower sentence than that agreed to by the State.

■ Regardless of these differences, Texas statutes governing the procedures involved when a defendant pleads guilty are intended to be included in Rule 410(3) as comparable to procedures under Feder-

al Rule 11. The language in Rule 410(3) regarding "comparable state procedures" allows the protection of Rule 410(3) to extend to statements made in the course of similar procedures in other states.

## B. "Timely Pass for Plea" and procedures under Rule 11 or comparable State procedures

■ We recognize that the "timely pass for plea" procedure is distinct from an open plea of guilt, a conditional plea, or a plea bargain agreement between the State and defendant regarding dismissal of other actions, punishment recommendations, or a maximum punishment which is subject to the trial court's approval. However, Rule 410(3) does not require that procedures be identical to those followed pursuant to Federal Rule 11, only that they be comparable. The "timely pass for plea" proceeding, while not governed by Federal Rule 11, is comparable to procedures under Federal Rule 11 as well as procedures under the corresponding provisions of the Texas Code of Criminal Procedure.

The procedure incorporates the safeguards provided by both Rule 11 and comparable state procedure, ensures the voluntariness of the plea by ensuring it is not made pursuant to promises made by the State that have not been introduced to the trial court, and encourages the parties to resolve the case short of trial.

The trial court, as required by Rule 11(e)(1), did not participate in any discussions between the parties concerning any of the plea agreement options outlined. The trial court did not ask for notice of any such agreement reached between the parties, as required by Rule 11(e)(2), but did explicitly notify the parties that she rejected any such agreement, as required by Rule 11(e)(4). Instead, the trial court ensured that both defendant and State un-

derstood the "timely pass for plea" procedure and agreed to waiving the right to a jury trial under the terms of that procedure. The trial court provided the advice required by Rule 11(c), insured that the plea was voluntary as required by Rule 11(d), determined the accuracy of the plea as required by Rule 11(f) based on appellant's stipulations, and recorded the proceedings as required under Rule 11(g).

The procedure is also consistent with corresponding provisions of the Texas Code of Criminal Procedure. Defendant pleaded guilty as provided by Article 27.02. Pursuant to Article 27.13, the defendant waived the right to trial by jury with the consent and approval of both the court and the attorney for the State, stipulated to the evidence against him and waived the right to confrontation and cross-examination as provided by Articles 1.13 to 1.15. Likewise, the trial court admonished appellant, informed appellant in open court, before making a finding on the plea, that she would reject any plea agreement, and determined that appellant was competent to plead as required by Article 26.13. Because appellant had waived the right to have a jury impaneled to assess the punishment, the trial court heard the evidence on which the punishment assessed would be based, and announced the court's assessment, pursuant to Article 26.14.

The trial judge then, pursuant to the procedure to which the parties had agreed, before entering judgment and upon appellant's request, exercised her discretion to allow appellant to withdraw his plea. We note that the State did not object to the request for withdrawal, the court's exercise of discretion in allowing appellant to withdraw his plea, nor the trial judge's announcement, prior to entrance of the plea, that she intended to exercise her discretion in this manner. Conversely, the State agreed to the use of the "timely pass for plea" procedure in consenting to appellant's jury trial waiver.

While the "timely pass for plea" is not a plea bargain, the procedure provides the same net effect as plea bargaining does. Both the State and the defendant receive the benefit of the potential of resolving the case short of trial. Although the benefit was not realized in this particular case, the procedure is apparently quite effective, and thus the State, in waiving its right to a jury trial, accepted the risk that the case would not be resolved through this plea process, just as it does when employing a plea agreement procedure where the trial court may not accept the agreement. Unlike a plea agreement, the State did not have to offer to be bound by a lower sentence than the State was legally entitled to seek or to forego prosecution on other potential charges for the benefit of resolving the case short of trial. However, just as the State was not bound to a compromise, neither was the defendant. This is the trade off provided by the trial court's "timely pass for plea" procedure. The procedure was provided as a middle ground: one that encourages defendants to plead guilty and yet protects them from pleading guilty based only on the potential benefit the defendant believes he may receive based on the prosecutor's willingness to compromise.

Although the "timely pass for plea" procedure is not identical to procedures under Federal Rule 11, it is comparable to those procedures and consistent with, insofar as it does not conflict with, state plea procedures. Therefore, any statement made in the course of any procedures under a "timely pass for plea" when the guilty plea is later withdrawn, will be protected by Rule 410(3).

## C. Punishment Testimony

The argument that statements made to enable the court to assess punishment are

somehow excluded from the protection of Rule 410(3) relies on a distinction that does not exist in Rule 410(3). Because the "timely pass for plea" procedure is comparable to procedures under Rule 11, Rule 410(3) protects any statement made in the course of that procedure.

■ Contrary to the State's contention, Rule 410(3) does not protect only the entry of the plea or written stipulations. If Rule 410(3) were limited only to the defendant's entry of his plea of guilty, it would be meaningless, because the plea of guilty is already protected under Rule 410(1). Likewise, evidence to support the guilty plea may be introduced in the form of written stipulations, but may also be presented orally.[14] Furthermore, if the defendant does not waive appearance, confrontation, and cross-examination of witnesses, the evidence may be presented through testimony under oath by witnesses, including the defendant.[15] Therefore, Rule 410(3) does not protect only written stipulations and does not exclude from its protection statements made under oath and subject to cross-examination.

■ The State also contends that Rule 410(3) excludes statements made on the issue of punishment because the rule protects only statements made regarding the plea itself, in other words, statements supplying the factual basis of the plea. However, statements made for purposes of assessing punishment may relate to the circumstances of the charged offense and support or undermine the factual basis for the plea. At the time judgment is rendered, there must be a factual basis for the plea.[16] A plea of guilty is not final until judgment is entered.[17] In a guilty plea proceeding, judgment is entered after or simultaneous to the imposition of punishment.[18]

■ Furthermore, a trial court may exercise its discretion and allow a defendant to withdraw a guilty plea at any time before judgment is entered.[19] Although one of the purposes for Rule 410 is to encourage plea bargaining as a way to promote pleas of guilty to resolve cases short of trial,[20] the Rule is predicated on the understanding that such pleas do not always end in a judgment, that some will be withdrawn, and that to give effect to the withdrawal, statements made in the plea proceeding should not thereafter be used against the defendant.[21] The fact that Rule 410 is not restricted to plea

---

**14.** Tx.Crim. Proc.Code art. 1.15.

**15.** *Id.*

**16.** *See United States v. Ventura–Cruel,* 356 F.3d 55, 60 (1st Cir.2003)(finding that the "factual predicate for a guilty plea must exist not only at the time that the court initially accepts the plea, but also when it imposes sentence." Therefore, any acceptance of the plea prior to judgment is necessarily preliminary.).

**17.** *See Id.*

**18.** *See Id.*

**19.** *See Gutierrez v. State,* 108 S.W.3d 304, 309 (Tex.Crim.App.2003)(recognizing that the trial

court's discretion to allow a defendant to withdraw a guilty plea is not restricted except where Texas Code of Criminal Procedure 26.13 makes allowing withdrawal mandatory.); *See also* FED.R.CRIM.P. 11(d) (2003)(providing when and under what circumstances a defendant may withdraw a plea of guilty in federal court).

**20.** *See* FED.R.EVID. 410 advisory committee's note ("[e]xclusion of offers to plead guilty or nolo has as its purpose the promotion of disposition of criminal cases by compromise.")

**21.** *See, e.g., Kercheval v. United States,* 274 U.S. 220, 224, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); *United States v. Davis,* 617 F.2d 677, 684 (D.C.Cir.1979).

bargain pleas of guilty that are later withdrawn is evidence of this additional intent.

■ We find the State's distinction between statements regarding the plea and statements regarding punishment to be a distinction without relevance under Rule 410(3). "[R]egarding a plea of guilty later withdrawn ...," describes the circumstance in which 410(3) will protect statements made in the plea proceedings, it does not define a subcategory of statements made in the course of the plea proceeding. We interpret the plain meaning of Rule 410(3) to be that any statement made in the course of a "timely pass for plea" proceeding where the plea of guilty is later withdrawn, will be inadmissible against the defendant who made the plea, subject to the optional completeness exception to Rule 410.

## D. No Exception for Perjury Prosecution or Impeachment

■ Both the Tyler Court of Appeals and the State also suggest that the policy involved in protecting statements under Rule 410(3) should not extend so far as to allow a defendant to lie under oath with impunity.

The Federal Rule 11 Advisory Committee recognized that "voluntary statements of an accused made in court on the record, in connection with a plea and determined by a court to be reliable should be admissible even though the plea is subsequently withdrawn," particularly where "a defendant would be able to contradict his previous statements and thereby lie with impunity." Federal Rule 11 and Federal Rule of Evidence 410, similar to Texas Rule of Evidence 410, both provide an exception that is somewhat more limited than the

advisory committee contemplated—that statements otherwise inadmissible under Federal Rule 11 and Federal Rule 410 are admissible in a prosecution for perjury.[22] Texas Rule of Evidence 410 does not include such an exception. The reasons for this omission are not clear.[23] Regardless of this Court's opinion of the policy issues involved, we cannot read into the rule an exception for perjury prosecutions. We also note that not even Federal Rule 410 provides an exception for use of otherwise inadmissible statements for impeachment purposes.

Furthermore, but for the appellant having withdrawn his guilty plea, we know of no legal impediment to prosecution for perjury under the facts of this case. The protection afforded under Rule 410 applies only when a plea is subsequently withdrawn. Therefore, it was in appellant's interest, as well as the State's, for appellant to testify truthfully at the "timely pass for plea" proceeding if they were to be able to dispose of this case without the necessity, expense, and uncertainty of a trial. If the appellant shot the victim while protecting his sister, as he testified before the grand jury, this could constitute a defense of protecting a third person which might prevent the judge from accepting his plea of guilty. Therefore, regardless of its possible veracity, it became necessary for him to retract his prior inconsistent grand jury testimony in order to attempt to resolve his case without going to trial.

## IV. Conclusion

Because we conclude that the statements the defendant made on the issue of

22. FED.R.CRIM.P. 11(e)(6); FED.R.EVID. 410.

23. *See* 1 STEVEN GOODE, OLIN GUY WELLBORN, III, M. MICHAEL SHARLOT, TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 410.4, at 356 (3d ed.2002).

punishment in the course of the "timely pass for plea" procedure were protected under Rule 410(3), we affirm the judgment of the Dallas Court of Appeals. We also reverse the judgment of the Tyler Court of Appeals and render judgment affirming the trial court's order that the plea-proceeding statements are inadmissible.

KELLER, P.J., joined in part and dissented in part with note.

COCHRAN, J., filed a dissenting opinion, in which KEASLER and HERVEY, JJ., joined.

KELLER, P.J., joins the Court's judgment insofar as it affirms the judgment of the Dallas Court of Appeals but dissents to the Court's judgment insofar as it reverses the judgment of the Tyler Court of Appeals on the perjury cases.

COCHRAN, J., filed a dissenting opinion, in which KEASLER & HERVEY, JJ., joined.

I respectfully dissent. I conclude that appellant's testimony in the punishment phase of a "timely pass for plea" proceeding (in which appellant had an absolute right to withdraw his plea if he did not like the sentence) did not constitute statements made in a Rule 11–type plea proceeding. Therefore, his testimony was not protected by Texas Rule of Evidence 410(3). I would affirm the decision by the Tyler Court of Appeals [1] and reverse the conflicting decision by the Dallas Court of Appeals.[2]

## I.

At the punishment stage of this "timely pass for plea" proceeding, the State called several witnesses to testify to facts sup-

porting a lengthy sentence. After the State rested, appellant explicitly waived his Fifth Amendment right to remain silent, and testified under oath that he killed Michael Wideman because he was "fed up with him." Appellant explained that when he was growing up, Wideman bullied him and took things from him, including his bicycle and a necklace.

Appellant testified that, on the night of the murder, he was at "Club Ice" with his cousin. Wideman was there with some of his gang members. Wideman slapped appellant on the back of the head and took his glasses. Appellant admitted that he left the club, not to go home to go to sleep—as he had testified under oath to the grand jury—but to find a gun. Appellant got his gun and confronted Wideman at the Whataburger:

Q: You went up to the Whataburger?

A: Yes.

Q: Tell the Judge what actually occurred when you got to the Whataburger?

A: When I pulled up at Whataburger, he was bending over in my sister's car, and I just jumped out. I jumped out of the car and walked up to him and shot him. I didn't even think. I just reacted.

Appellant also admitted that he lied to the grand jury about why he killed Wideman:

Q: Now, before the Grand Jury, you testified falsely, didn't you?

A: Yes, sir.

Q: Now, before the Grand Jury, you testified that the reason that you shot Michael Wideman was because you were protecting your sister?

---

1. *State v. Bowie,* 137 S.W.3d 95, No. 12–02–00182/83–CR, 2003 WL 745153, 2003 Tex. App. LEXIS 1902 (Tex.App.-Tyler 2003).

2. *Bowie v. State,* No. 05–02–00527–CR, 2003 WL 568905, 2003 Tex.App. LEXIS 1811 (Tex. App.-Dallas 2003) (not designated for publication).

A: Yes, sir.

Q: Is that the truth?

A: No, sir.

Q: Tell the Judge the reason why you shot Michael Wideman?

A: Because I was tired of him picking on me and just kept on taking things from me. I just got fed up with it.

Q: Kelvin is that the truth?

A: Yes, sir, and I couldn't take it no more.

Q: How long has that been going on?

A: All of my life.

Q: Kelvin, you took a man's life?

A: I know.

After appellant testified and the parties gave their punishment arguments, the trial judge announced her proposed sentence: fifty years confinement and a $5,000 fine. Appellant visited privately with his lawyers to decide whether he wanted to accept the court's sentence or withdraw his plea. He chose to withdraw his guilty plea, which, under the trial judge's "timely pass for plea" procedure, he had an absolute and unilateral right to do.

The case was then set for a jury trial in Dallas. During the murder trial, the State was allowed to offer appellant's self-incriminatory punishment stage testimony into evidence after the Dallas trial judge held that this testimony was not protected by Rule 410(3). Appellant was also indicted for perjury in Smith County for his sworn inconsistent statements before the grand jury and during the sentencing hearing. In a pretrial hearing, the trial judge held that appellant's sentencing hearing statements were protected by Rule 410(3); that ruling gutted the State's perjury case. As noted by the majority, the Dallas Court of Appeals (reviewing the murder conviction) and the Tyler Court of Appeals (reviewing the pretrial motion to suppress in the perjury prosecutions) reached conflicting results on whether Rule 410(3) protected appellant's punishment stage testimony when he was allowed to withdraw his guilty plea.

If a defendant's testimony during the punishment stage of this "timely pass for plea proceeding" falls under Rule 410(3) when a defendant later unilaterally rejects the trial judge's proposed sentence, then it is absolutely protected and cannot be used against him in either a trial on the merits of the case or in a later perjury prosecution. That was the conclusion by the Dallas Court of Appeals. If the punishment phase of "timely pass for plea proceeding" is not comparable to a Rule 11 proceeding, then a defendant's sworn statements at that hearing are admissible in any future proceeding, such as a perjury prosecution, against the declarant-defendant. That was the conclusion by the Tyler Court of Appeals. We granted discretionary review to resolve this conflict.

## II.

### A. A "timely pass for plea" proceeding is not "comparable" to a Federal Rule 11 plea proceeding.

Although this is a close question in an unusual situation, I agree with the Tyler Court of Appeals' majority which held that the trial court's "timely pass for plea" procedure is not a state procedure comparable to proceedings under Rule 11 of the Federal Rules of Criminal Procedure for purposes of Tex.R. Evid 410(3). The court of appeals explained:

Plea bargaining is the process by which the defendant in a criminal case relinquishes his right to go to trial in exchange for a reduction in charge and/or sentence. . . . The plea agreement procedure used in our federal system is described in Rule 11 of the Federal Rules

of Criminal Procedure.... Rule 11 has been interpreted as an absolute prohibition on all forms of judicial participation in or interference with the plea negotiation process.... The policy underlying Rule 11 is to allow a criminal defendant to freely negotiate without fear that any statements he makes during these negotiations will be used against him.... The "timely pass for plea" procedure used by the court in Bowie's murder case is not comparable to the plea agreement procedure outlined in Rule 11.... In the "timely pass for plea" procedure, there is no give-and-take between the government's attorney on one side and the defendant and his attorney on the other side. Rather, it is the judge who interacts with the defendant. The judge is orchestrating the entire procedure in open court, on the record. The judge views these proceedings as a trial and personally places the defendant under oath. No one is at liberty to lie under oath during a judicial proceeding.[3]

I, like the Tyler Court of Appeals, do not believe that the punishment stage of the "timely pass for plea" proceeding is a Rule 11-type proceeding. A Rule 11 proceeding in federal court occurs when a defendant enters his plea of guilty or *nolo contendere*, with or without a plea agreement.[4] Rule 11 does not encompass an evidentiary sentencing hearing.

In Texas, an article 26.13 hearing, in which a court considers and accepts or rejects a plea agreement between the State and defense is a Rule 11-type hearing. So too is an article 1.15 hearing in which a defendant enters a plea after waiving his right of trial by jury, the State introduces evidence into the record showing the guilt of the defendant, and the evidence is accepted by the trial court as the basis for its judgment.

The aim of both Federal Rule 11 hearings and the comparable Texas proceedings is "to ensure the integrity of the system and prevent prosecutorial overreaching or corruption by bringing plea bargaining out into the open and providing judicial supervision."[5] As a part of that appropriate judicial supervision, a trial judge—either federal or state—must satisfy himself that a defendant is pleading guilty voluntarily and knowingly.[6] Under both federal and Texas law, a trial judge must also satisfy himself that there is a factual basis for the guilty plea.[7] Rule 11 admonishments and inquiries are a necessary prerequisite when "the trial judge determines whether or not to accept a proposed plea bargain."[8] The purpose of a Rule 11-type plea colloquy, then, "is to protect the defendant from an unintelligent or involuntary plea."[9] Its purpose is not to air testimony so the trial judge may himself propose a sentence which the parties themselves have not previously agreed to. Rule 410(3) protects the guilty or nolo plea itself and any statements that the

---

**3.** *State v. Bowie,* 2003 WL 745153, at *1–2, 2003 Tex.App. LEXIS 1902 at *8–9.

**4.** FED. R.CRIM. PROC. 11. Although, read literally, Rule 11 also covers pleas of not guilty, those are not the Rule 11–type proceedings encompassed by FED.R.EVID. 410 or TEX.R. EVID. 410.

**5.** 2 CHRISOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 147, at 164 (2d ed.1994).

**6.** FED. R.CRIM. PROC. 11(c) & (d); TEX.CODE CRIM. PROC. art. 26.13(a) & (b).

**7.** FED. R.CRIM. PROC. 11(c)(5) & (f); TEX.CODE CRIM. PROC. art. 1.15.

**8.** MUELLER & KIRKPATRICK, *supra* note 5, § 142, at 122.

**9.** *Mitchell v. United States,* 526 U.S. 314, 322, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999).

defendant made during this plea colloquy if the plea is later withdrawn.[10] It does not throw a tent of privilege around the sentencing hearing.

In this case, appellant and the State both agree that the guilty plea itself, the associated documents signed, and statements appellant made at the time of the plea colloquy are protected under Rule 410(1) & (3). The State did not offer any statements appellant made during the article 1.15 or 26.13 plea proceeding against him in any later proceeding. To the extent that the purpose of Rule 410 is furthered by this "timely pass for plea" procedure at all, it was satisfied by protecting the plea and statements made during the entry of appellant's guilty plea.

### B. Statements made by a defendant at a sentencing or punishment hearing are not made during a Rule 11–type proceeding.

Neither the parties nor the Court cite a single case from any federal or Texas jurisdiction which has held that a defendant's sworn testimony given during a punishment hearing following an open plea[11] is protected under Rule 410(3). Generally, federal courts have held that post-plea-agreement statements are not protected by the rule.[12] Furthermore, fed-

---

10. *See, e.g., United States v. Davis,* 617 F.2d 677 (D.C.Cir.1979), in which the court of appeals explained the exclusionary purpose of FED.R.EVID. 410(3):

> Other statements made "during proceedings in connection with the disclosure and acceptance or rejection of a plea agreement" fall within the rule as well. Excluding these statements is necessary to effectuate the rejection or later withdrawal. Were the statements admissible, the defendant's own incriminating words, inseparably linked to a plea now regarded as a nullity, in many cases would operate to convict him, thereby rendering meaningless the rejection or withdrawal.

*Id.* at 684 (citations omitted). Texas courts, like the drafters of the federal rule, have recognized that a defendant who enters a guilty plea pursuant to a plea bargain agreement may make statements regarding the rationale for his plea that are designed primarily to effectuate the bargain. *See, e.g., Ex parte Tuley,* 109 S.W.3d 388, 405 (Tex.Crim.App.2003) (concurring op. on reh'g); *Cruz v. State,* 530 S.W.2d 817, 821–22 (Tex.Crim.App.1975) (stating that defendants "commonly deny during an Art. 26.13 ... inquiry that any promises have been made that induced a plea of guilty, when in fact the prosecutor has promised to recommend a certain sentence in exchange for the plea. The deceptive denial stems from the fear that the trial court will not accept the plea if the question is answered truthfully").

11. An "open plea"—a guilty plea entered without any previous agreement with the gov-

ernment—is the closest analogy to this "timely pass for plea" procedure, although an "open plea" cannot be retracted at the defendant's pleasure.

12. *See, e.g., Hutto v. Ross,* 429 U.S. 28, 30 n. 3, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976) (noting that defendant's post-plea agreement statement to prosecutor was not a statement made *during* the plea negotiation process and was not required by the terms of the plea agreement; holding that confession was not involuntary simply because "it would not have been made 'but for the plea bargain' "); *United States v. Marks,* 209 F.3d 577, 582 (6th Cir.2000) (defendants' inculpatory statements made to F.B.I. agents after plea agreement had been completed and formal pleas entered were not protected by Rule 11 and were admissible); *United States v. Segal,* 549 F.2d 1293, 1296 (9th Cir.1977) ("[i]t is the taking of the plea, not the imposition of sentence or the revocation of probation, to which the rule [Rule 11] is addressed"); *United States v. Davis,* 617 F.2d 677, 685 (D.C.Cir.1979). As the court in *Davis* explained:

> Excluding testimony made after and pursuant to the [plea] agreement would not serve the purpose of encouraging compromise. Indeed, such a rule would permit a defendant to breach his bargain with impunity: he could renounce the agreement and return to the *status quo ante* whenever he chose, even though the Government has no parallel power to rescind the compromise unilaterally. The drafters of rule 11(e)(6) could not have contemplated such a result.

eral courts have held that Rule 410 does not apply during the sentencing stage of a federal proceeding.[13] If federal courts recognize that statements made during the entry of a guilty plea *are* covered by Rule 410, but that Rule 410 does not apply to sentencing hearings, it would seem that federal courts recognize a distinction between Rule 11 plea proceedings and non-plea-agreement sentencing or punishment hearings.

The Supreme Court has not resolved the issue of whether Rule 11 plea proceedings are entirely distinct from sentencing hearings. However, in *Mitchell v. United States*,[14] the Court held that, in the federal system, a guilty plea does not waive the privilege against self-incrimination in the sentencing phase, either as a result of the Rule 11 proceeding or by operation of law when the plea is entered.[15] The Court explained:

> The Fifth Amendment by its terms prevents a person from being "compelled in any criminal case to be a witness against himself." U.S. Const., Amdt. 5. To

maintain that sentencing proceedings are not part of "any criminal case" is contrary to the law and to common sense. As to the law, under the Federal Rules of Criminal Procedure, a court must impose sentence before a judgment of conviction can issue. . . . As to common sense, it appears that in this case, as is often true in the criminal justice system, the defendant was less concerned with the proof of her guilt or innocence than with the severity of her punishment. Petitioner faced imprisonment from one year upwards to life, depending on the circumstances of the crime. To say that she had no right to remain silent but instead could be compelled to cooperate in the deprivation of her liberty would ignore the Fifth Amendment privilege at the precise stage where, from her point of view, it was most important. *Our rule is applicable whether or not the sentencing hearing is deemed a proceeding separate from the Rule 11 hearing, an issue we need not resolve.*[16]

*Id.* at 685 (citation omitted).

**13.** *United States v. Medina-Estrada*, 81 F.3d 981, 984 (10th Cir.1996) ("[s]ince Fed.R.Evid. 410 does not apply at sentencing, it cannot prohibit the sentencing court's consideration of evidence relating to pleas of guilty which are later withdrawn"); *United States v. Ruminer*, 786 F.2d 381, 386–87 (10th Cir.1986) (stating that neither Rule 410 nor Rule 11(e)(6)(D) apply at federal sentencing stage).

**14.** 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999).

**15.** The Supreme Court stated:

> Of course, a court may discharge its duty of ensuring a factual basis for a plea by "questioning the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant has pleaded." Rule 11(c)(5). We do not question the authority of a district court to make whatever inquiry it deems necessary

in its sound discretion to assure itself the defendant is not being pressured to offer a plea for which there is no factual basis. A defendant who withholds information by invoking the privilege against self-incrimination at a plea colloquy runs the risk the district court will find the factual basis inadequate. At least once the plea has been accepted, statements or admissions made during the preceding plea colloquy are later admissible against the defendant, as is the plea itself. A statement admissible against a defendant, however, is not necessarily a waiver of the privilege against self-incrimination. Rule 11 does not prevent the defendant from relying upon the privilege at sentencing.

Treating a guilty plea as a waiver of the privilege at sentencing would be a grave encroachment on the rights of defendants. *Id.* at 324, 119 S.Ct. 1307.

**16.** *Id.* at 327, 119 S.Ct. 1307 (emphasis added).

Similarly, in this case we need not decide whether a punishment hearing, following an open plea, is necessarily a proceeding separate from the Texas entry-of-plea hearing. However, we have followed the Supreme Court's lead in *Mitchell.*

In *Carroll v. State,*[17] we held that a defendant who pleads guilty, with a non-negotiated plea to the trial court, does not waive his right to remain silent at the sentencing proceeding.[18] Therefore, whether one calls the sentencing stage of a guilty plea hearing a unitary or separate proceeding, it certainly is a proceeding in which the defendant has a separate right to remain silent which he may choose to invoke or waive. It is not, however, a part of a guilty-plea colloquy which is the concern of both Federal and Texas Rule 410.

As the Supreme Court further explained in *Mitchell:*

> There is no convincing reason why the narrow inquiry at the plea colloquy should entail such an extensive waiver of the privilege. Unlike the defendant who taking the stand, who "cannot reasonably claim that the Fifth Amendment gives him ... an immunity from cross-examination on the matters he has himself put into dispute," ... the defendant who pleads guilty puts nothing in dispute regarding the essentials of the offense. Rather, the defendant takes those matters out of dispute, often by making a joint statement with the prosecution or confirming the prosecution's version of the facts. Under these circumstances, there is little danger that

the court will be misled by selective disclosure....[19]

Following the dictates of *Mitchell* and *Carroll,* the trial judge in this case explicitly warned appellant that he had a right not to testify during the punishment hearing, but that if he did choose to testify he would be treated as any other witness and his testimony would be under oath subject to cross-examination.[20] Only after appellant expressly waived his Fifth Amendment rights, did he take the witness stand to testify about his background, education, family, character, the details of this offense, and of his remorse for killing Michael Wideman. This testimony was not part of a plea negotiation process with the prosecution seeking a mutually advantageous compromise. It was not part of an entry-of-plea hearing. It was sworn testimony by a defendant who clearly had a Fifth Amendment right not to testify, but who knowingly and voluntarily waived that right and did testify in the hope of obtaining a more lenient sentence proposal from the trial judge.

I cannot think what public-policy rationale is served by insulating that freely given sworn testimony from any use in future criminal proceedings. The majority states that it was important that the State "did not object to [appellant's] request for withdrawal, the court's exercise of discretion in allowing appellant to withdraw his plea, nor the trial judge's announcement, prior to entrance of the plea, that she intended to exercise her discretion in this

---

**17.** 42 S.W.3d 129 (Tex.Crim.App.2001).

**18.** *Id.* at 132.

**19.** *Mitchell,* 526 U.S. at 322–23, 119 S.Ct. 1307.

**20.** Indeed, it seems ironic that the trial judge clearly warned appellant that any sworn testi-

mony he gave at the punishment hearing would be treated like that of any other witness, but later found herself constrained to suppress that previously warned testimony under Rule 410(3)—a rule that she stated for the record that she disagreed with but was required to follow.

manner." [21] But, under the trial court's "timely pass for plea" procedure, the prosecutor is almost superfluous. The State is entitled to offer evidence and argument at the punishment stage, but that is the extent of its participation in the process. The entry of the plea, the colloquy between the defendant and the court, the determination of a proposed sentence, and the decision of whether or not to accept that proposed sentence are matters conducted solely between the trial judge and the defendant.

Perhaps, as the Court states, this procedure "provides the same net effect as plea bargaining does" [22] to the extent that some criminal cases may be resolved short of a full trial. However, it does so at the heavy expense of excluding the State from the plea bargaining process; putting the trial judge very far forward in that process; and wholly insulating a defendant's public, sworn testimony during the punishment stage from any future consequences if he declines the trial judge's proffered sentence and withdraws his plea.

I cannot agree that either the letter or the spirit of Rule 410(3) protects appellant from his own voluntary sworn testimony during the punishment hearing of this "timely pass for plea" proceeding after he decided that he did not wish to accept the trial judge's proposed sentence. Although he might well have other valid complaints concerning this process, [23] appellant should not be allowed to claim the protection of Rule 410(3) which was designed to protect very different societal and criminal justice

interests than those at issue here. Therefore, I respectfully dissent.

**21.** *Bowie,* 135 S.W.3d at 63 (majority opinion).

**22.** *Bowie,* 135 S.W.3d at 63 (majority opinion).

**23.** *See, e.g., State ex rel. Bryan v. McDonald,* 662 S.W.2d 5, 9 (Tex.Crim.App.1983) (setting out various reasons why "[j]udicial involvement in plea negotiations runs afoul of due process and fundamental fairness" and holding that trial judge's "practice of issuing proposed assessments of punishment" violated the Texas Constitution).